## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ROSA RAMIREZ, *et al.*,

      *Plaintiffs*,

    v.

JACKPOT JANITORIAL &
COMMERCIAL SERVICES, LLC, *et al.*,

      *Defendants*.

Civil Action No. 23 - 1862 (LLA)

## <u>MEMORANDUM OPINION</u>

Plaintiffs Rosa Ramirez and Elsy Alberto sue Defendants Jackpot Janitorial & Commercial Services, LLC ("Jackpot Janitorial") and Jamol Speight for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, the District of Columbia Minimum Wage Revision Act ("DCMWA"), D.C. Code § 32-1001 *et seq.*, and the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.*  ECF No. 17.  Plaintiffs move for default judgment under Federal Rule of Civil Procedure 55.  ECF No. 23.  For the reasons explained below, the court will grant Plaintiffs' motion.

### I.    FACTUAL BACKGROUND

In 2022 and 2023, Ms. Ramirez and Ms. Alberto worked for Jackpot Janitorial, a company that provides janitorial services at various buildings located mostly in the District of Columbia. ECF No. 17 ¶¶ 5, 8.  Jackpot Janitorial—which is incorporated in the District and maintains its primary location here—is owned and operated by Mr. Speight.  *Id.* ¶¶ 5-6.  During the relevant time period, Mr. Speight "controlled Jackpot's operations and equity" and also "controlled all

details of [Ms. Ramirez and Ms. Alberto's] employment personally or through managers under his direct control." *Id.* ¶ 11.

From January 10, 2023 through March 21, 2023, Defendants employed Ms. Ramirez to provide cleaning services at the Embassy of Singapore. *Id.* ¶ 26. She worked eight-hour day shifts, Monday through Friday, at a promised rate of $17.00 per hour. *Id.* ¶¶ 26, 27, 29. From February 9, 2023 through March 21, 2023, Defendants also employed Ms. Ramirez to clean a property in Virginia. *Id.* ¶ 27. There, she worked four-hour night shifts, Monday through Saturday, at a promised rate of $15.00 per hour. *Id.* ¶ 27. The District of Columbia minimum wage at the time was $16.10 per hour, *id.* ¶ 30, and District law requires that employees be paid one-and-a-half times their regular wage for hours exceeding forty hours per week, *id.* ¶ 31. For her work at Jackpot Janitorial, Ms. Ramirez has received only a one-time payment of $2,000 from Defendants. *Id.* ¶ 32.

From June 3, 2022 through March 11, 2023, Defendants employed Ms. Alberto to provide cleaning services at the Brazilian Naval Commission. *Id.* ¶¶ 13, 16. She worked forty hours per week at a regular rate of $16.00 per hour. *Id.* ¶¶ 13-14. On July 1, 2022, the District of Columbia minimum wage was raised to $16.10 per hour, but Defendants did not increase Ms. Alberto's pay accordingly. *Id.* ¶ 15. Additionally, Defendants have not paid Ms. Alberto for any work completed between January 15, 2023 and March 11, 2023. *Id.* ¶ 16.

Neither Ms. Ramirez nor Ms. Alberto worked on the federal holidays on January 26, 2023 or February 20, 2023; however, Defendants promised to pay them their full wages for both days. *Id.* ¶¶ 16-17, 27, 33. Defendants have not done so. *Id.* ¶¶ 17, 33.

## II.    PROCEDURAL HISTORY

Plaintiffs filed this suit on June 27, 2023, ECF No. 1, and attempted to effect personal service on both Jackpot Janitorial and Mr. Speight, *see* ECF No. 2.  After several unsuccessful attempts at service, Plaintiffs moved for alternative service on Defendants, arguing that Mr. Speight had absconded to Maryland and was refusing service individually and on behalf of Jackpot Janitorial.  ECF No. 6 ¶¶ 6-9.  The court (Howell, J.) granted the motion and permitted Plaintiffs to serve Defendants by first-class mail in accordance with Maryland Rule of Civil Procedure 2-121(c), which provides that "the court may order any other means of service that it deems appropriate in the circumstances and reasonably calculated to give actual notice."  Md. R. Civ. P. 2-121(c); *see* Aug. 4, 2023 Minute Order.  Plaintiffs thereafter moved for the court to accept their alternative service as validly executed.  ECF No. 9.  The court granted the motion but directed Plaintiffs to provide the court with tracking numbers for the service packages because they had failed to submit proof of delivery.  Sept. 13, 2023 Minute Order.  Plaintiffs provided the court with tracking numbers on September 15, 2023.  ECF No. 11.  Plaintiffs then moved for entry of default, ECF No. 13, and the Clerk of Court entered a default in December 2023, ECF No. 14.

In December 2024, the case was reassigned to the undersigned.  Dec. 14, 2023 Minute Entry.  In February 2024, because Plaintiffs had not filed a motion for default judgment, the court ordered Plaintiffs to show cause why the case should not be dismissed for failure to prosecute under Federal Rule of Civil Procedure 41(b) and Local Civil Rule 83.23.  Feb. 1, 2024 Minute Order.  Plaintiffs submitted a timely response, ECF Nos. 15-16, and the court discharged the show-cause order with instructions that Plaintiffs should move for default judgment or other appropriate relief by February 22, 2024.  Feb. 1, 2024 Minute Order.

On February 20, 2024, Plaintiffs filed an amended complaint that added and clarified factual allegations, corrected formatting errors, and revised calculations for damages.  *Compare*

ECF No. 1 (original complaint), *with* ECF No. 17 (amended complaint).   A few days later, Plaintiffs moved for summary judgment.   ECF No. 18.   Because the amended complaint rendered moot the preceding entry of default, the court vacated the Clerk of Court's December 2023 default and denied Plaintiffs' motion for summary judgment as premature.   Feb. 26, 2024 Minute Order. In May 2024, after Defendants had again failed to appear, Plaintiffs moved for entry of default. ECF No. 21.   The same month, the Clerk of the Court entered a default, ECF No. 22, and Plaintiffs filed a motion for default judgment, ECF No. 23.   The motion is now ripe for resolution.

### III.    LEGAL STANDARDS

"[T]he Federal Rules of Civil Procedure provide for default judgments . . . [to] safeguard plaintiffs 'when the adversary process has been halted because of an essentially unresponsive party,'" and to protect the "the diligent party . . . lest he be faced with interminable delay and continued uncertainty as to his rights."   *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005) (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).   A court may therefore "enter default judgment [under Federal Rule of Civil Procedure 55] when a defendant fails to defend its case appropriately or otherwise engages in dilatory tactics."   *Peak v. District of Columbia*, 236 F.R.D. 13, 15 (D.D.C. 2006).   Default judgment is appropriate only when the defendant is "a totally unresponsive party and its default [is] plainly willful, reflected by its failure to respond to the summons and complaint, the entry of default, or the motion for default judgment."   *Edwards v. Charles Schwab Corp.*, No. 19-CV-3614, 2022 WL 839636, at *1 (D.D.C. Feb. 14, 2022) (quoting *Flynn v. JMP Restoration Corp.*, No. 10-CV-102, 2010 WL 1687950, at *1 (D.D.C. Apr. 23, 2010)).

Federal Rule of Civil Procedure 55 requires a plaintiff to complete two steps to obtain a default judgment.   *See* Fed. R. Civ. P. 55.   First, the plaintiff must ask the Clerk of the Court to

Case 1:23-cv-01862-LLA    Document 26    Filed 03/21/25    Page 5 of 14


enter default based on a defendant's failure "to plead or otherwise defend" in response to the complaint. Fed. R. Civ. P. 55(a). Upon entry of default, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Robinson v. Ergo Sols., LLC*, 4 F. Supp. 3d 171, 178 (D.D.C. 2014) (quoting *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002)); *see Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001). Second, after the Clerk has entered a default, the plaintiff must file a motion for default judgment and provide notice of the same to the defaulting party. Fed. R. Civ. P. 55(b)(2). Once a plaintiff has satisfied both procedural steps, "[t]he determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008).

"Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30. "Accordingly, when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested." *Herrera v. Mitch O'Hara LLC*, 257 F. Supp. 3d 37, 42-43 (D.D.C. 2017). "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *R.W. Amrine Drywall Co.*, 239 F. Supp. 2d at 30.

## IV.    DISCUSSION

The court begins by assessing whether Plaintiffs have properly served Defendants, and accordingly, whether the Clerk of Court's entry of default was proper. It then considers Defendants' liability under the FLSA, the DCMWA, and the DCWPCL and calculates the damages owed to Plaintiffs.

### A.    Service

Default judgment can only be entered against a party that has defaulted on its obligation to respond to the complaint.  *See Peak*, 236 F.R.D. at 15-16.  The obligation to respond is triggered by proper service of process.  *See* Fed. R. Civ. P. 12(a)(1)(A).  Thus, "[a] default 'cannot be entered where there was insufficient service of process.'"  *Radiant Glob. Logistics, Inc. v. Am. Indep. Distillery Coop.*, No. 20-CV-3239, 2021 WL 5416633, at *3 (D.D.C. Nov. 19, 2021) (quoting *Scott v. District of Columbia*, 598 F. Supp. 2d 30, 36 (D.D.C. 2009)).  Plaintiffs have the burden of proving that service was proper.  *See Mann v. Castiel*, 681 F.3d 368, 372 (D.C. Cir. 2012); *Myeress v. ProAm Dance Team NYC LLC*, No. 18-CV-109, 2019 WL 1011336, at *3 (D.D.C. Mar. 4, 2019).

Plaintiffs have carried their burden of proving that service was proper.  In accordance with the court's orders permitting alternative service, *see* Aug. 4, 2023 Minute Order; Sept. 14, 2023 Minute Order, Plaintiffs served Jackpot Janitorial and Mr. Speight by certified mail on September 15, 2023 and provided the tracking numbers to the court, ECF No. 11; *see* ECF No. 11-1.  That was sufficient to prove service under the court's orders.  *See Ventura v. L.A. Howard Construction Co.*, 134 F. Supp. 3d 99, 102 (D.D.C. 2015) (accepting alternative service by first-class mail completed in accordance with the court's order).  The Clerk of Court's December 2023 entry of default was thus proper.

Plaintiffs thereafter amended their complaint, ECF No. 17, which prompted the court to vacate the December 2023 default, Feb. 26, 2024 Minute Order; *see Mwani v. Al Qaeda*, 600 F. Supp. 3d 36, 53 (D.D.C. 2022) ("When an amended complaint becomes operative, a default entered as to the prior complaint is generally deemed mooted.").  While a party is generally required to serve all pleadings that are "filed after the original complaint," Fed. R. Civ. P. 5(a)(1)(B), service is not "required on a party who is in default for failing to appear"

unless the pleading "asserts a new claim for relief against such a party," in which case the pleading must be served consistent with Rule 4, *id.* R. 5(a)(2); *see Belkin v. Islamic Republic of Iran*, 667 F. Supp. 2d 8, 20 (D.D.C. 2009).   Under Rule 5(a)(2), Plaintiffs were not required to serve Defendants with the amended complaint because Defendants were in default at the time Plaintiffs filed their amended complaint and Plaintiffs did not assert any new claims against Defendants in the amended complaint.   *Compare* ECF No. 1 (original complaint), *with* ECF No. 17 (amended complaint).   Nevertheless, Plaintiffs elected to serve Defendants via first-class mail.   ECF No. 17, at 12; *see* Fed. R. Civ. P. 5(b)(2)(C) (explaining that one way to effect service under Rule 5 is by "mailing [the pleading] to the person's last known address—in which event service is complete upon mailing").   The court commends that choice, as it gives the court extra confidence that the Clerk of Court's May 2024 entry of default after Defendants failed to respond to the amended complaint was proper.[1]   Therefore, the court will deem Plaintiffs' well-pleaded allegations in the amended complaint admitted.   *See Robinson*, 4 F. Supp. 3d at 178.

### B.    Liability

The FLSA requires that "[e]very employer . . . pay to each of his employees" wages that are no less than the federal minimum wage of $7.25 per hour, 29 U.S.C. § 206, and compensate employees for any hours worked in excess of forty hours per week "at a rate not less than one and one-half times the regular rate at which [the employee] is employed," *id.* § 207(a)(1).   The DCMWA requires that employers in the District of Columbia pay their employees a minimum wage, which at the time of the events in this case was $16.10 per hour.[2]   D.C. Code

---

[1] Additionally, Mr. Speight has acknowledged the existence of the suit.  ECF No. 21 ¶ 9.

[2] The $16.10 hourly rate applies to work done outside the District of Columbia when, as here, "[t]he employee regularly spends more than 50% of their working time in the District of Columbia."  D.C. Code § 32-1003(b).

§ 32-1003(a) to (b); *see Public Notice: District of Columbia Minimum Wage Increase*, District of Columbia Department of Employment Services (2022).[3]  The Act further requires employers to compensate any employee who works "in excess of [forty] hours at a rate not less than [one and one-half] times the regular rate at which the employee is employed."  D.C. Code § 32-1003(c). The DCWPCL requires that employers pay their employees on "regular paydays designated in advance by the employer and at least twice during each calendar month."  *Id.* § 32-1302.

Under the FLSA, an "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  The term "person" includes a corporation.  *Id.* § 203(a).  The FLSA's definition of "employer" "is necessarily a broad one in accordance with the remedial purpose of the Act."  *Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 10 (D.C. Cir. 2001) (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058 (2d Cir. 1988)).  The DCMWA's definition of "employer" is virtually identical to the FLSA's. D.C. Code § 32-1002(3).  The DCWPCL defines "employer" (with some additions and exceptions not relevant here) as any individual or corporation "employing any person in the District of Columbia."  *Id.* § 32-1301(1B).  "[C]ourts in this district have consistently concluded that determinations of employer or employee status under the FLSA apply equally under the District of Columbia wage laws."  *Wright v. Off. of Wage Hour*, 301 A.3d 660, 684 (D.C. 2023) (alteration in original) (quoting *Bonilla v. Power Design Inc.*, 201 F. Supp. 3d 60, 63 (D.D.C. 2016)); *see Guevara v. Ischia, Inc.*, 47 F. Supp. 3d 23, 26 (D.D.C. 2014).

The court concludes that Plaintiffs' well-pleaded allegations establish that Jackpot Janitorial and Mr. Speight were Plaintiffs' employers and that Jackpot Janitorial and Mr. Speight violated the FLSA, DCMWA, and DCWPCL.  First, regarding employer status, Jackpot Janitorial

---

[3] *Available at* https://perma.cc/CG6P-WLTZ.

is plainly a corporation "acting directly or indirectly in the interest of an employer in relation to an employee" under the FLSA, 28 U.S.C. § 203(d), and the DCMWA, D.C. Code § 32-1002(3). Additionally, it is a corporation "employing a[] person in the District of Columbia" under the DCWPCL. D.C. Code § 32-1301(1B).

The court also concludes that Mr. Speight is an "employer" under the FLSA, DCMWA, and DCWPCL. *See Herrera*, 257 F. Supp. 3d at 43 (explaining that an individual can be held liable where he qualifies as an "employer" under the relevant statute). To determine whether an individual is an "employer" under these statutes, courts apply the "economic reality" test. *See Morrison*, 253 F.3d at 11; *Steinke v. P5 Sols., Inc.*, 282 A.3d 1076, 1084-85 (D.C. 2022). That test considers "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Morrison*, 253 F.3d at 11 (quoting *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994)). Importantly, "[n]o one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence." *Id.*

Plaintiffs contend that "Mr. Speight is properly considered an 'employer' for all purposes along with Jackpot insofar as, in economic reality, he controlled Jackpot's operations and equity and controlled all details of employment personally or through managers under his direct control." ECF No. 17 ¶ 11. They further allege that Mr. Speight is the "primary owner and operator of Jackpot Janitorial," *id.* ¶ 6, and that he "controlled the pay rates, work pay, work duties, and the pay records of each of the Plaintiffs in this case," ECF No. 23-1, at 8, as well as their work schedules, both "directly and through his hired managers," ECF No. 23-6 ¶ 10; ECF No. 23-7 ¶ 11. Based on these allegations, Mr. Speight meets each criterion of the economic reality test and is

therefore an employer under the FLSA, DCMWA, and DCWPCL.  *Morrison*, 253 F.3d at 11; *Herrera*, 257 F. Supp. 3d at 44 (finding that an individual was an employer under the FLSA and DCWPCL based on similar allegations).

Second, Plaintiffs' well-pleaded allegations establish that Jackpot Janitorial and Mr. Speight are liable for violations of the FLSA, DCMWA, and DCWPCL.  In their complaint, Plaintiffs allege that Defendants: failed to pay Ms. Ramirez any wages beyond one lump-sum of $2,000, ECF No. 17 ¶¶ 32, 34-36; intended to pay her $15.00 per hour for her work in Virginia even though they were required to pay her the District of Columbia minimum wage of $16.10 per hour, *id.* ¶¶ 29-30; failed to pay her overtime when she worked more than forty hours per week, *id.* ¶ 34; and failed to pay her for two federal holidays despite promising her paid time off, *id.* ¶ 33. Plaintiffs further allege that Defendants: failed to pay Ms. Alberto any wages between January 15, 2023 and March 11, 2023, *id.* ¶ 16; failed to increase her wage to $16.10 per hour beginning on July 1, 2022, as required by District of Columbia law, *id.* ¶ 15; and failed to pay her for two federal holidays despite promising her paid time off, *id.* ¶ 17.  These allegations sufficiently state claims under the FLSA, DCMWA, and DCWPCL for both Plaintiffs.  Accordingly, the court concludes that Jackpot Janitorial and Mr. Speight are jointly and severally liable for violations of the FLSA (Ms. Ramirez) and the DCMWA and DCWPCL (both Plaintiffs).

### C.    Damages

As noted, the court must make an independent determination on damages based on affidavits and other supporting documentation supplied by Plaintiffs.  *R.W. Amrine Drywall Co.,*

239 F. Supp. 2d at 30.   Here, Plaintiffs have provided copious documentation for the court's consideration.  *See* ECF Nos. 17-2, 17-3, 17-4, 23-6, 23-7.[4]

Under federal law, an employer who violates Section 206 or 207 of the FLSA "shall be liable to the employee[s] . . . in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional amount as liquidated damages."  29 U.S.C. § 216(b).  The DCMWA and DCWPCL significantly overlap with the FLSA but additionally provide for liquidated damages "equal to treble the amount of unpaid wages."  D.C. Code §§ 32-1012(b)(1), 32-1308(a)(1)(A)(ii).  Because the District's law for liquidated damages is more generous to employees, the court will "assess damages under [the District's] law and will not award a duplicative amount pursuant to federal law."  *Herrera*, 257 F. Supp. 3d at 44; *see* 29 C.F.R. § 778.5 (directing that the higher rate applies).

### 1.    Ms. Ramirez

Ms. Ramirez was employed by Defendants from January 10, 2023 through March 21, 2023, working at the Embassy of Singapore during this period and additionally working in Virginia from February 9, 2023 through March 21, 2023.  ECF No. 17 ¶ 25; ECF No. 23-7 ¶ 2. She alleges that Defendants promised her a rate of $17.00 per hour for her work at the Embassy of Singapore, ECF No. 17 ¶ 29; ECF No. 23-7 ¶ 3, and $15.00 per hour for her work in Virginia, which was below the District of Columbia minimum wage of $16.10, ECF No. 17 ¶¶ 29-30; ECF No. 23-7 ¶ 4.   At the Embassy of Singapore, Ms. Ramirez worked eight-hour shifts Monday through Friday, with the exception of two holidays—Martin Luther King Day on January 16, 2023,

---

[4] Plaintiffs have notified the court that they intend to petition for attorney's fees, but that motion is not presently before the court.  ECF No. 23-1, at 9.  Any such motion should be filed within fourteen days of entry of judgment.  Fed. R. Civ. P. 54(d)(2)(B)(i).

and Presidents' Day on February 20, 2023—for which Defendants promised that she would receive her regular pay as holiday pay.  ECF No. 17 ¶ 27; ECF No. 23-7 ¶¶ 3, 5.  In Virginia, Ms. Ramirez worked four-hour shifts Monday through Saturday, entitling her to overtime for all hours worked over forty hours per week from February 9, 2023 through March 21, 2023.  ECF No. 17 ¶¶ 26-27, 31; ECF No. 23-7 ¶¶ 3-4, 6.  Other than a one-time payment of $2,000, Ms. Ramirez has not been paid at all.  ECF No. 17 ¶ 32; ECF No. 23-7 ¶¶ 9-10.

Plaintiffs' supporting documentation demonstrates that Ms. Ramirez should have been paid for 360 hours of work at the Embassy of Singapore at a rate of $17.00 per hour, 116 hours of work in Virginia at a rate of $16.10 per hour, and 96 hours of overtime, which Plaintiffs calculate using a "blended weighted average" of her $17 and $16.10 hourly rates to arrive at a figure of $8.125 per hour—less a one-time payment of $2,000.  ECF No. 17 ¶¶ 26-27, 29-32; ECF No. 23-1, at 5-6; ECF No. 23-7 ¶¶ 9-10; *see* ECF No. 23-4.  Additionally, Ms. Ramirez should have been paid for 16 hours of the promised holiday pay at a rate of $16.00 per hour.  ECF No. 17 ¶ 33, 64; ECF No. 23-1, at 5-6.  In addition to those wages, she is entitled to an award of liquidated damages equaling three times the amount of unpaid wages.  D.C. Code §§ 32-1012(b)(1), 32-1308(a)(1)(A)(ii).  Accordingly, the court will award Ms. Ramirez the following:

| Table 1: Ms. Ramirez | Hours | Rate | Sub-Total |
|---|---|---|---|
| Unpaid Regular Hours (Embassy of Singapore) | 360.0 | $17.00 | $6,120.00 |
| Unpaid Regular Hours (Virginia) | 116.0 | $16.10 | $1,867.60 |
| Unpaid Overtime Hours (blended rate) | 96.0 | $8.125 | $780.00 |
| Unpaid Promised Holiday Hours[5] | 16.0 | $17.00 | $272.00 |

---

[5] As Plaintiffs explain, holiday pay does not constitute payment for "work" for minimum wage or overtime purposes.  *See* ECF No. 17 ¶¶ 20, 59.  However, unpaid holiday pay falls into the category of unpaid wages for the purposes of calculating liquidated damages.  *Carazani v. Zegarra*, 972 F. Supp. 2d 1, 17 (D.D.C. 2013) (construing withheld holiday pay as a component of unpaid wages); *see* D.C. Code § 32-1301(3) ("'[W]ages' includes . . . other remuneration promised or owed: [p]ursuant to a contract for employment."); *id.* §32-1308(a)(1)(A) ("[A prevailing party] shall be awarded . . . [l]iquidated damages equal to treble the amount of unpaid wages.").

| | |
|---|---|
| Unpaid Wages Initial Sub-Total<br>(*Unpaid Wages + Unpaid Overtime Wages + Unpaid Holiday Pay*) | $9,039.60 |
| Credit Paid by Defendants | - $2,000.00 |
| Unpaid Wages Final Sub-Total<br>(*Unpaid Wages Initial Sub-Total - Credit Paid by Defendants*) | $7,039.60 |
| Liquidated Damages (*3x Unpaid Wages Final Sub-Total*) | $21,118.80 |
| **Total** (*Unpaid Wages Final Sub-Total + Liquidated Damages*) | **$28,158.40** |

2.    Ms. Alberto

Ms. Alberto was employed by Defendants from June 3, 2022 through March 11, 2023. ECF No. 17 ¶ 16; ECF No. 23-6 ¶¶ 2-3.  From July 1, 2022 to January 15, 2023, Defendants paid Ms. Alberto $16.00 per hour—$0.10 per hour less than the District of Columbia minimum wage at the time.  ECF No. 17 ¶ 14-15; ECF No. 23-6 ¶ 3; ECF No. 23-1, at 4.  After January 15, 2023, Defendants stopped paying her any wages and failed to pay her for two promised paid federal holidays.  ECF No. 17 ¶¶ 16-17, 19-20; ECF No. 23-6 ¶¶ 4, 6-7.  Other than the weeks of the holidays, Ms. Alberto worked for forty hours per week.  ECF No. 17 ¶¶ 14, 16; ECF No. 23-6 ¶ 6.

Plaintiff's documentation demonstrates that Ms. Alberto should have been paid for 1,120 hours of work before January 15, 2023 at a rate of $0.10 to meet the appropriate minimum wage of $16.10, 304 hours of work from January 16 to March 11 at a rate of $16.10 per hour, and 16 hours of the promised holiday pay at a rate of $16.00 per hour.[6]  ECF No. 17 ¶¶ 15-19, 21-22; ECF No. 23-1, at 4; ECF No. 23-6 ¶ 3-4, 6-7; *see* ECF No. 23-4.  She is also entitled to liquidated damages equaling three times the amount of unpaid wages.  D.C. Code §§ 32-1012(b)(1), 1308(a)(1)(A)(ii).[7]  Accordingly, Ms. Alberto is entitled to the following:

---

[6] While the District of Columbia minimum wage at the time was $16.10 an hour, Plaintiffs represent that this does not apply to holiday pay.  ECF No. 23-1, at 4.

[7] As noted, unpaid holiday pay is a component of the liquidated damages calculation.  *See supra* at 12 n.5.

| Table 2: Ms. Alberto | Hours | Rate | Sub-Total |
|---|---|---|---|
| Under-Paid Regular Hours (through January 15) | 1,120.0 | $0.10 | $112.00 |
| Unpaid Regular Hours (January 16 - March 11) | 304.0 | $16.10 | $4,894.40 |
| Unpaid Promised Holiday Hours | 16.00 | $16.00 | $256.00 |
| Unpaid Wages Sub-Total<br>(*Under-Paid Wages + Unpaid Wages + Unpaid Holiday*) | | | $5,262.40 |
| Liquidated Damages (*3x Unpaid Wages Sub-Total*) | | | $15,787.20 |
| **Total** (*Unpaid Wages Sub-Total + Liquidated Damages*) | | | **$21,049.60** |

## V.    CONCLUSION

For the foregoing reasons, the court will grant Plaintiffs' motion for default judgment, ECF No. 23, and will enter judgment against Jackpot Janitorial & Commercial Services, LLC and Mr. Speight, jointly and severally, in the amount of $7,039.60 in unpaid wages and $21,118.80 in liquidated damages, for a total of $28,158.40, plus post-judgment interest, for Ms. Ramirez; and $5,262.40 in unpaid wages and $15,787.20 in liquidated damages, for a total of $21,049.60, plus post-judgment interest, for Ms. Alberto.  A contemporaneous order will issue.

LOREN L. ALIKHAN
United States District Judge

Date:   March 21, 2025